The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Wanda Blanche Taylor and the briefs on appeal. Both parties waived oral argument before the Full Commission. The appealing party has shown good ground to reconsider the evidence. Upon reconsideration of the evidence of record, Full Commission reverses the prior Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into the by parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement dated 14 August 1996 as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to governance by the North Carolina Worker's Compensation Act.
2. An employee-employer relationship existed at all time relevant herein.
3. Defendant-Employer was non-insured at all times relevant herein.
4. Plaintiff was injured in an accident occurring on 27 January 1995.
5. The parties, without further proof or identification, stipulated into evidence the following medical records:
a. DCH Regional Medical Center;
b. DCH Emergency Phy-Medical Center
c. University Orthopaedic Clinic, PC;
d. North Star Paramedic Services, Inc.;
e. Tuscaloosa Pain Anesthesia;
f. Surgical Associates of Tuscaloosa, PC;
g. Plastic Surgery of West Alabama;
h. Tuscaloosa Radiology Clinic;
i. Neurological Associates of Tuscaloosa;
j. Revco Drug Stores (medication);
k. Dr. Paul D. Long;
l. Dr. Martin Hatcher;
m. Dr. David Best; and,
n. Hand Rehabilitation Specialist.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff was is a right hand dominant male, born on 26 October 1970. Plaintiff has attended MTA Technical School, where he studied diesel mechanics and received a certification as a diesel mechanic-truck driver and a Class A Commercial drivers' license. Thereafter, plaintiff worked for MTA as a diesel mechanic for approximately three years until sometime in 1991. Plaintiff then worked with Carolina Kenworth as a diesel mechanic and with Hub Trucking as a diesel mechanic-truck driver from August 1993 through January 1994. Thereafter, plaintiff became employed with Combine Transportation as a diesel mechanic-truck driver. On 25 January 1995, Combine Transportation became Rocky Road Express, the defendant-employer in this matter.
2. Plaintiff was employed with defendant primarily as a diesel mechanic and a long distance truck driver. Plaintiff generally worked Monday through Friday, transporting freight to various destinations and performing mechanical work on his own truck and occasionally on other trucks.
3. During most weeks while working for defendant, plaintiff worked more than forty hours and was paid at a rate of twenty-five cents per mile when driving, and ten dollars per hour when he was performing mechanical work. Plaintiff's 1994 W-2 wage and tax statement, the only evidence of wage submitted at the hearing other than plaintiff's testimony, reflects plaintiff's 1994 earnings at $18,270.07.
4. On 27 January 1995, plaintiff average weekly wage was $351.35, yielding a compensation rate of $234.25
5. The terminal from which plaintiff worked for defendant is in Winston-Salem, North Carolina. On 27 January 1995, plaintiff had delivered a load in Louisiana and was thereafter dispatched to pick up a load of paper in Trinity, Mississippi. Plaintiff arrived in Trinity at approximately 5:00 p.m. and had to wait at the paper mill because his load was not ready.
6. While waiting for his load of paper, it was discovered that the back of plaintiff's trailer was leaking and it was determined that the trailer would have to be repaired before he could pick up the paper. Plaintiff contacted defendant's dispatcher and informed him that the trailer was leaking and needed repairs. At this time it was approximately 9:30 p.m,. and plaintiff was instructed by the dispatcher to head back toward Winston-Salem and spend the night at the nearest truck stop, which was in Tuscaloosa, Alabama, and to locate a shop to repair the trailer the following morning.
7. Plaintiff then left the paper mill and headed toward the nearest truck stop in Tuscaloosa, Alabama. Plaintiff's intended stop was at Baggett's Union 76 truck stop.
8. As plaintiff approached the exit for Baggett's Union 76 truck stop at the intersection of I-20 and Highway 82 in Tuscaloosa, he was listening to his CB/ham radio and heard a female requesting assistance because she was being harassed by someone in another vehicle that was following her. Another truck driver had also heard the female driver's radio broadcast and he instructed the woman to pull off at a Texaco, which was across the highway from Baggett's Union 76 truck stop. Plaintiff stopped his truck on the side of Highway 82 at the entrance to Baggett's Union 76 truck stop and crossed the road to the Texaco gas station where the female driver and the motorist who was harassing her were parked. Plaintiff and the other truck driver who had come to the woman's assistance were successful in protecting the woman and causing the harassing motorist to leave the area. Plaintiff then started to cross the highway to return to his truck and continue to Baggett's Union 76.
9. As plaintiff started to cross the street, he turned back to say something and was hit by an oncoming vehicle. Plaintiff was knocked unconscious and remained so for approximately one week. Among plaintiff's injuries were fractures of the right fibula, of the pelvis and of the frontal sinus. Plaintiff also suffered an injury to the right brachioplexus and right fractured scapula.
10. Plaintiff remained in the hospital for approximately one month and then went to live with his parents as he was unable to take care of himself. As plaintiff's physicians were primarily located in Alabama, he transferred his care to Dr. Long of Piedmont Orthopaedics and Dr. Hatcher, a neurologist. At the time of the hearing on 14 August 1996, plaintiff continued to experience severe problems in his right arm and almost complete paralysis of his right arm. Plaintiff's other physical conditions have improved since his injury. Plaintiff has not been evaluated for a permanency rating or a determination of whether or not he is at maximum medical improvement for any of the injuries he sustained as a result of his 27 January 1995 accident.
11. In August 1996, plaintiff began working with Drive Line Services of Greensboro. At the time of the hearing before the Deputy Commissioner, plaintiff had been employed there for approximately one and one half months repairing, replacing, and balancing automobile drive shafts. Plaintiff was hired at this job on a trial basis to see if he could handle the job duties. Plaintiff's rate of pay with Drive Line Services was $7.50 per hour.
12. At the hearing on 14 August 1996, plaintiff testified that he enjoyed the soft drink Dr. Pepper, that the Union 76 truck stop did not carry this brand, but that the Texaco station across the highway did carry it. Plaintiff also testified that he had parked his truck at or near the entrance of the Union 76 the truck stop and crossed the four lane highway for the sole purpose of buying a Dr. Pepper soft drink at the Texaco station.
13. Plaintiff's testimony in this regard is not accepted as credible. An affidavit from Mr. Jerry Baggett, owner of the Union 76 truck stop, indicates that the Union 76 truck stop did in fact carry the Dr. Pepper brand of soft drink. Additionally, plaintiff's testimony regarding the soft drink is not accepted as credible in light of his other testimony that he had stopped and crossed the highway to assist another motorist. Finally, plaintiff's testimony regarding the soft drink is not supported by the testimony of a friend and co-worker who testified that while in the hospital, plaintiff told him that he had stopped his truck and crossed the highway to assist another motorist.
14. Plaintiff was not acting for the benefit of his employer to any extent when he crossed the highway to assist another motorist and his actions in this regard in no way fostered the business interests of the employer.
15. Plaintiff's actions on 27 January 1995 were a significant deviation from the course and scope of his employment. The accident in which plaintiff was injured on that date did not arise out of his employment and did not occur in the course and scope of his employment with defendant.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's actions on 27 January 1995, which resulted in his injuries, were not for the benefit of the employer and did not arise out of or occur in the course of his employment. G.S. § 97-2(6).
2. Plaintiff's actions on 27 January 1995 constituted a significant deviation from the course and scope of his employment. G.S. § 97-2(6). Therefore, said incident and plaintiff's resulting injuries are not compensable under the Workers' Compensation Act.Id.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Plaintiff's claim must under the law be, and is hereby DENIED.
2. Each side shall pay its own costs.
 S/ ________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ______________________ THOMAS J. BOLCH COMMISSIONER
S/ ______________________ RENÉE C. RIGGSBEE COMMISSIONER